IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CATARINO SANDOVAL, | § | |
| TDCJ-CID NO.11496128, | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-10-2122 |
| RICK THALER, *et al.,* | § | |
| Defendants. | § | |

MEMORANDUM AND ORDER ON DISMISSAL

Plaintiff Catarino Sandoval, a state inmate proceeding *pro se* and *in forma pauperis*, filed a civil rights suit against numerous defendants, alleging violations of his civil rights. The Court dismissed all claims except one pursuant to 28 U.S.C. § 1915(e)(2)(B). (Docket Entry No.39). The Court retained plaintiff's retaliation claim that Sgt. David Turrubiate falsely charged him with a disciplinary violation and placed him in prehearing detention on October 31, 2009, because plaintiff filed a written statement in a use-of-force investigation. (Docket Entries No.15, page 11; No.29-1, pages 6-7).

Pending are defendant Turrubiate's motion for summary judgment and plaintiff's cross-motion for summary judgment. (Docket Entries No.54, No.57). For the reasons to follow, the Court will grant defendant Turrubiate's motion for summary judgment, deny plaintiff's cross-motion for summary judgment, and dismiss this case with prejudice.

## I. DISCUSSION

Plaintiff moves for summary judgment on the ground that Sgt. Turrubiate retaliated against him by giving him a false

disciplinary case for exercising his First and Eleventh Amendment rights. (Docket Entry 57).

Defendant contends he is entitled to summary judgment because plaintiff's pleadings fail to state a claim giving rise to a constitutional violation and fail to defeat his entitlement to qualified immunity. (Docket Entry No.54).

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. Duckett v. City of Cedar Park, Tex., 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." Hamilton v. Seque Software, Inc., 232 F.3d 473, 477 (5th Cir. 2000) (quoting Conkling v. Turner, 18 F.3d 1285, 1295 (5th Cir. 1994)).

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" Saucier v. Katz, 533 U.S. 194, 199-200 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). Qualified immunity "provides ample protection to all but

the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

"To rebut the qualified immunity defense, the plaintiff must show: (1) that he has alleged a violation of a clearly established constitutional right, and (2) that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident." Waltman v. Payne, 535 F.3d 342, 346 (5th Cir. 2008) (footnote omitted). The Court has discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009).

"To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. There need not be 'commanding precedent' that holds that the 'very action in question' is unlawful; the unlawfulness need only be 'readily apparent from relevant precedent in sufficiently similar situations.'" Brown v. Miller, 519 F.3d 231, 236-37 (5th Cir. 2008) (citations omitted). In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper. Babb v. Dorman, 33 F.3d 472, 477 (5th Cir. 1994).

The Constitution does not expressly refer to retaliation but courts have found retaliation claims to be actionable because

retaliatory actions may chill an individual's exercise of constitutional rights. *See* <u>Perry v. Sinderman</u>, 408 U.S. 593, 597 (1972). Claims of retaliation from prison inmates, however, must be regarded with skepticism, lest federal courts embroil themselves in every adverse act that occurs in penal institutions. <u>Woods v. Smith</u>, 60 F.3d 1161, 1166 (5th Cir. 1995). To state a retaliation claim, an inmate must invoke a specific constitutional right, the defendants' intent to retaliate against the inmate for his or her exercise of that right, a retaliatory adverse act, and causation, *i.e.* "but for the retaliatory motive the complained of incident . . . would not have occurred." <u>Id.</u> The inmate must allege more than his personal belief that he is the victim of retaliation. <u>Jones v. Greninger</u>, 188 F.3d 322, 325 (5th Cir. 1999). The inmate must either produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. <u>Id.</u> at 324-25. Retaliation is actionable only if the retaliatory act "is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." <u>Bibbs v. Early</u>, 541 F.3d 267, 270 (5th Cir. 2008).

Eleventh Amendment

Plaintiff states no facts or law that would give rise to an retaliation claim based on the Eleventh Amendment; therefore, the Court will dismiss this claim as conclusory.

## First Amendment

Plaintiff alleges that he engaged in speech protected by the First Amendment when he gave a written statement to prison officials, who were investigating a use-of-force incident involving another guard and inmate.  Plaintiff claims that on October 31, 2009, around 8:00 a.m. Officer Knotts assaulted inmate Jonathan Reggins while Reggins was being escorted to the showers on 2 row; plaintiff claims that Reggins was handcuffed during the assault. (Docket Entries No.43, page 7, No.57, page 4).  Plaintiff, who was housed on 1 row, claims that after the incident he submitted a written statement describing Reggins's appearance when Reggins came down the stairs, *i.e.*, red marks on his face and side, and what he clearly heard while Reggins was on 2 row.  (Docket Entry No.43, page 8).  He claims that after Officer Palmtree retrieved his statement, Sgt. Turrubiate approached his cell, visibly upset, and told plaintiff that plaintiff was going to P-block for writing a false statement.  Plaintiff claims that Turrubiate said that plaintiff could not see anything on 2 row and that he could not file a statement about what he heard.  (Id.).  Plaintiff retorted that he could file a statement about the red marks that he observed on Reggins's face.  (Id.).

Plaintiff claims that Turrubiate then ordered him to pack his property because he was going to the disciplinary block for making a false statement.  (Id.).  Plaintiff claims he protested that he had a right to file a witness statement.  (Docket Entry No.29-1,

5

page 7).  Plaintiff was then escorted to the disciplinary block, where Turrubiate and two officers placed him in a cell.[1]  (Docket Entry No.15, page 11).

Plaintiff claims he was given a false disciplinary case days later, for attempting to assault an unknown officer on October 31, 2009.  (Id.).  At the disciplinary hearing, plaintiff attempted to call two witnesses but was only allowed to use their written statements.  (Docket Entry No.29-1, page 5).  One officer, who was on the wing at the time of the incident, gave a statement that plaintiff was not aggressive or violent while she was present.  (Id.).  The Disciplinary Hearing Officer, Captain Robert P. Jennings, found sufficient evidence to support a charge filed by Turrubiate that plaintiff had attempted to assault an unknown officer by threatening "to chunk the next gray uniform" and by attempting to open food slot by hitting it with his fist.[2]  (Docket Entry No.15, page 11).  Plaintiff claims his class line level was dropped, all privileges were taken away, and he was placed on the disciplinary wing for ninety days.  (Docket Entry No.29-1, page 6).

---

1  See Step 1 and Step 2 Grievance Number 2010042283 at Docket Entry No.1-4, pages 3-6.

2  The hearing officer based his finding on the charging officer's report.  Among the evidence considered was a written statement by the inmate for whom plaintiff had submitted a witness statement.  This inmate stated that the officers lied about the charge and that he witnessed the retaliation.  Another inmate submitted a statement stating that "Turbo said he was going to send him to P-Block for writing a witness statement for another offender."  (Docket Entry No.54-1, pages 8-10).  Investigative notes show that plaintiff complained that the disciplinary charge was in retaliation for plaintiff filing a witness statement.  (Id., page 11).  Turrubiate indicated on the same report that there had been a use of force that day and that he had sent an officer to get a statement from the offender.  (Id.).

The record shows that his line class was unchanged and that he was given cell restriction for fifteen days. (Docket Entry No.54-1, page 6). Plaintiff claims Turrubiate and two officers were investigated by the Unit's administration but no action was taken. (Docket Entry No.15, page 11).

Defendant Turrubiate contends his actions did not violate clearly established statutory or constitutional right of which a reasonable person would have known. (Docket Entry No.54, page 5).

"That inmates have a well-established constitutional right to access the courts, based in part of the First Amendment, is clear." Thaddeus-X v. Blatter, 175 F.3d 378, 391 (6th Cir. 1999). A prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998), or for complaining through proper channels about a guard's misconduct. See Morris v. Powell, 449 F.3d 682, 684 (5th Cir. 2006).

"Less clear are the contours of free speech rights in the prison setting." Thaddeus-X, 175 F.3d at 391. At least two circuit courts, however, have found that truthful speech by an inmate regarding misconduct of a prison official supports legitimate penological interests and constitutes a protected First Amendment activity. See Bridges v. Gilbert, 557 F.3d 541, 551 (7th Cir. 2009) (inmate gave eyewitness and aural account in his affidavit filed in wrongful death suit against prison officials who allegedly mistreated a gravely ill inmate); Cornell v. Woods, 69

F.3d 1383, 1388 (8th Cir. 1995) (inmate's statements regarding guard's violation of institutional rules, which prison administrators procured by promise of immunity during an internal investigation, were "undoubtedly quite consistent with legitimate penological objections" and implicated First Amendment protection). Without question "[p]risons have an interest in keeping the inmates as safe and secure as possible while imprisoned, and truthful speech that describes possible abuses can actually be quite consistent with that objective." Bridges, 557 at 551. However, "neither ordinary citizens nor prisoners have an absolute right to provide government investigators with useless or irrelevant information." Cornell, 69 F.3d at 1388, n. 5.

In this case, prison officials were not investigating the misconduct of any officer but documenting a use-of-force incident, which involved another inmate and another guard. Plaintiff was not an eyewitness to the use-of-force incident; he claims only to have overheard the incident from his cell and observed red marks on the inmate's face and body after the incident. Plaintiff does not indicate what "criminal acts" he "clearly" heard from his first row cell; nor does he relay the content of his statement regarding the incident. Nevertheless, he alleges that the officer assaulted the inmate while the inmate was handcuffed. Without some facts regarding the content of the statement, from which plaintiff concluded that the officer committed criminal acts, plaintiff fails to show that his statement was truthful, useful, or relevant to the

use-of-force investigation. Therefore, he fails to show a violation of a First Amendment right to give a truthful statement in an internal prison investigation. *See* <u>Tighe v. Wall</u>, 100 F.3d 41, 43 (5th Cir. 1996) (retaliation claim fails if inmate cannot demonstrate violation of specific constitutional right).

Because plaintiff was not an eyewitness to the use-of-force incident, a reasonable officer could conclude that plaintiff's account of the incident in his written statement was false and therefore, in violation of prison disciplinary rules.[3] Therefore, Sgt. Turrubiate's threat of disciplinary action did not violate clearly established First Amendment law.

Plaintiff, however, claims that Turrubiate filed a bogus disciplinary charge against him, which was unrelated to the charge that he filed a false statement, because plaintiff submitted the written statement to use-of-force investigators. Other than Turrubiate's conduct in ordering plaintiff to prehearing detention based on a reasonable belief that plaintiff violated a disciplinary rule by filing a false statement, plaintiff provides no direct evidence of Turrubiate's intent to retaliate against him for writing the statement. Instead, plaintiff claims that the written

---

[3] Plaintiff claims that Turrubiate moved him to the disciplinary wing on a charge based on fraud, which is a Level III, Code 04.0; 18.1 violation. (Docket Entry No.57, page 6).

*See also* Rule 29.0 of knowingly making false statements during an official investigation at <u>TDCJ Disciplinary Rules and Procedures for Offenders</u>, Rev. April 2010, GR-106, at <u>http://www.tdcj.state.tx.us/publications/index.html</u> (viewed June 12, 2012); <u>Hart v. Hairston</u>, 343 F3d 762, 763 (5th Cir. 2003).

statement he submitted in the use-of-force investigation was the "final straw" for Turrubiate, against whom plaintiff had filed several grievances from October 20, 2009, through October 31, 2009, regarding medical showers. (Docket Entry No.57, pages 2-3). Plaintiff argues that the chronology of events that he has alleged, which include the grievances and the written statement, give rise to a plausible inference of Turrubiate's motive for filing the allegedly false disciplinary charge against him. (Id., page 3).

This Court found in its Memorandum and Order on Partial Dismissal that plaintiff's "claim that Sgt. Turrubiate filed the disciplinary charge in retaliation for grievances that plaintiff filed regarding medical showers suffers from plaintiff's failure to allege facts showing causation." (Docket Entry No.39). Citing Tampa Times Co. v. National Labor Relations Board,[4] the Court noted "[t]hat one incident precedes another is not proof of a causal connection." (Id.).

Plaintiff's disciplinary conviction, which has not been invalidated, is probative and potent summary judgment evidence to prove the allegations contained in it. See Woods, 60 F.3d at 1166. Although plaintiff proffers the written statements given by two inmates at the disciplinary hearing as proof that the disciplinary charge was bogus, neither inmate stated facts that would show that plaintiff did not commit the disciplinary violation for which he was convicted. Inmate Reggins, the offender who was involved in

---

4 193 f2d 582 (5th Cir. 1952).

10

the use-of-force incident, stated that he witnessed retaliatory acts of denying plaintiff medical showers and food, and refusing to get rank when requested. (Docket Entry No.54-1, page 9). Reggins also stated that he heard the officers threaten plaintiff because he wrote the witness statement. (Id.). Inmate Resendez stated that he heard "Turbo" threaten to send plaintiff to the disciplinary block for writing a witness statement for another offender and that plaintiff told Turbo that he was "treating" him. (Id., page 10). Neither inmate stated that plaintiff did not commit the disciplinary violation.

The Fifth Circuit has cautioned district courts to "carefully scrutinize" claims of retaliation to ensure that prisoners do not "inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around themselves." Woods, 60 F.3d at 1166). Any other rule would allow a prisoner to openly flout prison regulations after filing a grievance and then bring a claim under § 1983 arguing that prison officials disciplined him in retaliation for filing a grievance. Orebaugh v. Caspari, 910 F.2d 526, 528 (8th Cir. 1990). Without summary judgment evidence giving rise to a question of fact regarding the validity of his conviction, plaintiff's unsubstantiated claim that the disciplinary case is bogus is insufficient to show that he was the victim of retaliation simply because he was given a case after he filed grievances against Turrubiate and other officers. Plaintiff fails to show that but for Turrubiate's intent to retaliate for the

grievances and the written statement, he would not have received the disciplinary violation.

Accordingly, defendant Turrubiate is entitled to summary judgment on plaintiff's retaliation claim.

## II. CONCLUSION

Based on the foregoing, the Court ORDERS the following:

1.    Defendant David Turrubiate's Motion for Summary Judgment (Docket Entry No.54) is GRANTED. All claims against defendant Turrubiate are DENIED.

2.    Plaintiff's Motion for Summary Judgment (Docket Entry No.57) is DENIED.

3.    Plaintiff's motion for an extension of time to file a motion for summary judgment (Docket Entry No.55) is DENIED, as moot.

4.    This case is DISMISSED WITH PREJUDICE.

5.    All other pending motions, if any, are DENIED.

The Clerk will provide a copy of this Order to the parties.

SIGNED at Houston, Texas, on _____ June 20, 2012.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE